IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK SPRINT IPHONE 4 SEIZED FROM MASTER GIDDINS AND LOCATED AT THE BALTIMORE POLICE DEPARTMENT, 601 EAST FAYETTE STREET, BALTIMORE, MARYLAND | Case No. 17-3377 JMC |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Special Agent ("SA") Sung Kim, being duly sworn, deposes and states as follows:

1. This is an affidavit in support of a search warrant authorizing the search of a Black SPRINT IPHONE 4, seized from Master Giddins on October 4, 2013 (the "**Target Cellphone**"), as described further in Attachment A. The phone is currently in the custody of the Baltimore Police Department ("BPD"), located at 601 East Fayette Street, Baltimore, MD 21202.

2. The applied-for warrant would authorize the forensic examination of the **Target Cellphone** to identify evidence of violations of 18 U.S.C. § 2113 (bank robbery), as more particularly described in Attachment B and using the protocols described in Attachment B.

3. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other

law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

## YOUR AFFIANT

4. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

5. I am a Special Agent of the FBI and am currently assigned to a violent crime task force comprised of FBI agents, detectives from the BPD and detectives from the Baltimore County Police Department ("BCPD"). I have worked for the FBI since 2008 and have participated in numerous investigations focusing on violent crimes, including, bank robberies, Hobbs Act robberies, kidnappings, extortions, and fugitives. I have also participated in the execution of numerous state and federal search and arrest warrants involving violent offenders.

6. I am familiar with the mode of operation of individuals who commit violent crimes, including, but not limited to, their use of cellular telephones to plan and coordinate their crimes. Based on my knowledge, training, and experience, I know the following:

   a. Individuals who commit violent crimes often use cellular telephones, communication devices, and other electronic media storage to further their illegal activities.

   b. Cellphones have digital camera capabilities and digital storage capacity. Violent criminals sometimes take photographs of themselves, their co-conspirators, weapons and/or the proceeds of their crimes. These pictures are often stored on a criminal's cell phone.

2

  c.  Individuals who commit violent crimes often maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity on their cellphones.

  d.  Individuals who commit violent crimes frequently use cellular telephones to make voice calls and to exchange text messages with other co-conspirators regarding their criminal offenses. Cellphones frequently store records of these communications.

## PROBABLE CAUSE

7.  On September 25, 2013, a male subject ("SUBJECT") wearing women's clothing and a black wig entered the M&T Bank in Baltimore, Maryland, handed the teller a demand note stating that the person had a bomb, and demanded that money be placed into a black and white polka dot cosmetic bag, which was handed to the teller. After obtaining the money, the SUBJECT fled the bank, was driven away in a waiting vehicle, and discarded a GPS tracker the teller had placed in the bag, to which wig fibers were attached. Police later determined that the SUBJECT was Master GIDDINS, that the getaway car was his silver Ford Focus, and that the getaway driver was Czekiah Fludd.

8.  On September 26, 2013, GIDDINS lent his car to Fludd and Ashley Fitz, whom GIDDINS was dating at the time. Fitz and Fludd drove to an Exxon station to obtain blank lottery tickets, on which one or both of them wrote a note similar to the note used in the September 25th robbery. They then drove to the First Mariner Bank in Owings Mills, Maryland, where Fitz entered the bank wearing a black wig and carrying a black and white polka dot cosmetic bag. After handing the bag and note to a teller, Fitz was given cash, and then ran from the bank. A construction worker saw Fitz and Fludd get into GIDDINS's car, and the Exxon station recorded the pair on the video obtaining the blank lottery tickets.

9. On September 27, 2013, GIDDINS again lent his car to Fitz and Fludd. They, along with a third person, Alexis Chandler, robbed the Baltimore County Savings Bank in unincorporated Baltimore County, Maryland. Fitz and Chandler entered the bank wearing wigs, gave notes that they had a bomb, and demanded money. Fitz was given a dye pack along with her money, which exploded on the way back to the car. Fitz threw the bag out of the window, and additional items were discarded. When the three women went back to try to obtain the bags, they were stopped for matching the description of the bank robbery suspects. They were ultimately arrested, and the car was seized.

10. After their arrest, Fitz and Chandler provided statements to the police and admitted involvement in the September 27th robbery. Fitz additionally admitted to participating in the September 26th robbery and implicated GIDDINS in the robbery scheme. Fitz told police that the September 26th robbery was committed using GIDDINS's car. Fitz also stated that GIDDINS had been present when both robberies were planned, and that GIDDINS had been involved in the September 25th robbery.

11. Based on the statements and evidence, Detective William Taylor of the Baltimore City Police Department applied for and obtained a warrant for GIDDINS' arrest from a Commissioner of the District Court of Maryland for Baltimore, City. On October 4, 2013, GIDDINS came to the police station to retrieve his vehicle and was interviewed by Detective Taylor. Following that interview, GIDDINS was placed under arrest per the Baltimore City warrant, and his personal items, including the **Target Cellphone**, were seized pursuant to that arrest.

12. Cell site data obtained for the **Target Cellphone** showed that it was connecting to the cell tower closest to the M&T Bank in Baltimore, Maryland on September 25, 2013, the date

4

_____
J. Mark Coulson
United States Magistrate Judge

17-3377 JMC

FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JAN 22 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

of the first robbery. Investigators know that cellphones like the **Target Cellphone** keep call logs and text message exchanges, in addition to photos, email and other items. Information about any communications that GIDDINS had on or around the dates of these robberies will provide evidence of the bank robbery conspiracy. In addition, other communications and information will show GIDDINS' contact and relationship with his co-conspirators.

13. On March 12, 2014, GIDDINS was indicted by a Federal Grand Jury in the United States District Court for the District Court of Maryland on four counts of Bank Robbery, Title 18 U.S.C. § 2113(a) and one count of Conspiracy to Commit Bank Robbery, Title 18 U.S.C. § 371.

14. On October 3, 2014, Master GIDDINS III was convicted of one count of bank robbery (for the September 25, 2013 robbery) and conspiracy to commit bank robbery following a jury trial in the United States District Court, District of Maryland, before the Honorable Judge William D. Quarles Jr. Part of the evidence used at trial was a videotaped statement GIDDINS gave to police during the investigation into the crime. On appeal, the Fourth Circuit Court of Appeals reversed his conviction, finding that the District Court erred in admitting the recorded statement, and remanded the case to District Court. It is now pending trial in February 2018.

## CONCLUSION

15. Based on the above information, I submit that there is probable cause to believe that the **Target Cellphone** and the records therein, contain evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. §§ 1951, and 924(c) as described in Attachment B. I therefore respectfully request the issuance of the search warrant accompanying this affidavit.

Sung Kim
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn to me this 15 day of December, 2017.

5



17-3377 JMC

## ATTACHMENT B – SEARCH PROTOCOLS

This warrant authorizes the search and seizure of the following electronically stored information, contained within the item described in Attachment A:

a. digital images;

b. records of incoming and outgoing voice communications;

c. records of incoming and outgoing text messages;

d. the content of incoming and outgoing text messages;

e. voicemails;

f. voice recordings; and

g. contact lists,

that are related to the investigation into a Hobbs Act robbery, as more fully described in the Affidavit.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol:

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

    a. Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein by specific date



ranges, names of individuals, or organizations;

   b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

   c. Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

   d. Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.

17-3377 JMC

## ATTACHMENT A – DESCRIPTION OF ITEM TO BE SEARCHED

The item to be searched is a black SPRINT IPHONE 4, seized from Master Giddins on October 4, 2013 (the "**Target Cellphone**"). The device is currently kept in evidence at the Baltimore City Police Department, located at 601 East Fayette Street Baltimore, MD 21202.

The device will be charged and powered on. The device and all readable and searchable contents will be downloaded to a "CellBrite or XRY" device. The "CellBrite" or "XRY" device allows the user to bypass any password protected utility on the phone. The contents downloaded on the "CellBrite" or "XRY" device will then be copied to a readable computer disc and reviewed by your affiant. A search warrant return will be provided to the Court thereafter.